UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA

CASE NO. 8:24-CV-01991-WFJ-NHA

WORLDWIDE AIRCRAFT SERVICES, INC.,
d/b/a JET ICU, a Florida corporation,

      Plaintiff,

vs.

WORLDWIDE INSURANCE SERVICES, LLC,
D/B/A GEOBLUE;
BLUE CROSS AND BLUE SHIELD
OF FLORIDA, INC. a Florida profit corporation,
LOUISIANA HEALTH SERVICE
& INDEMNITY COMPANY, d/b/a BLUE CROSS
AND BLUE SHIELD OF LOUISIANA, a corporation,

      Defendants.

_____/

**DEFENDANT BLUE CROSS AND BLUE SHIELD OF FLORIDA, INC.'S
MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT
AND INCORPORATED MEMORANDUM OF LAW**

      Defendant BLUE CROSS AND BLUE SHIELD OF FLORIDA, INC.,

("Florida Blue"), by and through its undersigned counsel, hereby files this Motion to

Dismiss Plaintiff's Second Amended Complaint [D.E. 1-1] and Incorporated

Memorandum of Law, and states as follows:

**I.    INTRODUCTION AND SUMMARY OF ALLEGATIONS**

      Plaintiff WORLDWIDE AIRCRAFT SERVICES, INC. d/b/a JET ICU

("JET ICU") provides air ambulance services and "frequently provides or procures

ancillary services such as ground ambulance(s) and water ambulance(s)." Second Am.

Compl. ¶ 2 [D.E. 1-2]. On November 1, 2023, a patient identified as "Y.D." suffered an emergency condition in the Dominican Republic. Second Am. Compl. ¶¶ 6–9. This patient "was a participant or member" in a "HEALTH PLAN" at the time of the incident. Second Am. Compl. ¶ 6. JET ICU uses the phrase "HEALTH PLAN" to refer collectively to all Defendants – (i) Florida Blue together with (ii) WORLDWIDE INSURANCE SERVICES, LLC, D/B/A GEOBLUE ("GeoBlue") and (iii) LOUISIANA HEALTH SERVICE & INDEMNITY COMPANY, d/b/a BLUE CROSS AND BLUE SHIELD OF LOUISIANA ("BCBSLA"). Second Am. Compl. ¶ 5.

According to JET ICU, all three Defendants function as a "health plan/insurer providing certain benefits to eligible insureds or members." Second Am. Compl. ¶¶ 3–4. JET ICU admits that it is "uninformed at this time of the exact contractual or legal relationship between GeoBlue, Florida Blue and BCBSLA." Second Am. Compl. ¶ 5. And yet, JET ICU "alleges that the three defendants are jointly responsible for claims processing and payment of providers" who render services to members of the HEALTH PLAN. Second Am. Compl. ¶ 5. JET ICU contends Defendants "carryout the functions and work of a health insurer/health plan." Second Am. Compl. ¶ 5.

The "HEALTH PLAN" that forms the basis of this dispute is an "employee welfare benefit plan" within the meaning of the Employee Retirement Income Security

Act of 1974, 29 U.S.C. ch. 18 ("ERISA").[1] By JET ICU's account, the "HEALTH PLAN" is central to this action. The "HEALTH PLAN" is the foundation of the alleged responsibility for "processing and payment" of claims when services are rendered to "participants" such as Y.D. It is the reason why JET ICU submitted "a Health Insurance Claim Form 1500 and other documents necessary to process JET ICU's request for payment" of benefits. Second Am. Compl. ¶ 14.

JET ICU transported Y.D. by ground ambulance to the hospital once the patient arrived in Orlando from the Dominican Republic. Second Am. Compl. ¶ 9. JET ICU "believes . . . such ground ambulance was covered by [Y.D.'s] insurance plan contract." Second Am. Compl. ¶ 11. Despite submitting its Claim Form and expecting to receive its "usual and customary rate" of $8,858.00, JET ICU received "a small, partial payment" for the service it rendered. Second Am. Compl. ¶ 9.

Against this backdrop of a formal claim submission to the HEALTH PLAN where JET ICU disputes the Defendants' performance under that plan, JET ICU sues for "civil theft." Second Am. Compl. ¶¶ 17–28. According to the operative Complaint,

---

[1] Florida Blue furnished a copy of the applicable health plan document as an exhibit to its removal papers [D.E. 1-7, pg. 6 of 153]. JET ICU depends on the existence of this written instrument to contend that Defendants' performance under that instrument (or lack thereof) amounts to civil theft. The health plan document is central to the Second Amended Complaint and properly before the Court on a motion under Federal Rule of Civil Procedure 12(b)(6). *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1668–69 (11th Cir. 1997) ("[W]here the plaintiff refers to certain documents in the complaint and those documents are central to the plaintiff's claim, then the Court may consider the documents part of the pleadings for purposes of Rule 12(b)(6) dismissal, and the defendant's attaching such documents to the motion to dismiss will not require conversion of the motion into a motion for summary judgment." (citing *Venture Assoc. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir.1993)).

the purported "theft" occurred after JET ICU "submitted a claim for reimbursement to [the] Plan" and the Defendants "failed to pay JET ICU the reasonable value" of its services. Second Am. Compl. ¶¶ 21–22. JET ICU points to ***"the duty under contract law"*** that Defendants owed to Y.D. to "arrange for and/or cover" ground ambulance services. Second Am. Compl. ¶ 20 (emphasis added). JET ICU accuses the Defendants of conspiring "to steal" from JET ICU. Second Am. Compl. ¶¶ 24. Finally, JET ICU seeks relief under the doctrine of quantum meruit while emphasizing the Defendants' "obligation to actually provide this specific coverage" as a condition of the Defendants' "license(s) to sell insurance." Second Am. Compl. ¶ 56.

## II.   <u>CONCISE STATEMENT OF THE PRECISE RELIEF REQUESTED</u>

Florida Blue seeks dismissal of the Complaint on various grounds. *First*, the state-law causes of action depend on or derive from the Defendants' purported improper processing of a claim for benefits under an ERISA plan. The merits of these claims cannot be considered without reference to the ERISA plan. As a result, the state-law claims are completely preempted by ERISA's exclusive civil remedy system. *Second*, JET ICU fails to state plausible claims of civil theft or conversion. The claims do not allow for a reasonable inference that Defendants had the criminal intent necessary for a civil theft claim. Nor do the claims allege (i) facts sufficient to show Plaintiff's ownership of the subject funds and (ii) facts to show Defendants wrongfully asserted dominion over those funds. *Third*, JET ICU fails to state a plausible claim for quantum meruit because the provision of medical services to a patient enrolled in an ERISA plan does not confer a *direct* benefit on a claims administrator of the plan.

III.    **ARGUMENT**

    A.    **JET ICU's State Law Claims Are Completely Preempted By ERISA**

ERISA's civil enforcement mechanism represents a classic example of a statutory provision which commands complete preemptive power over state-law claims falling within its preemptive scope. Here, although JET ICU describes its claims in state-law terms of "civil theft" and "quantum meruit," the claims fall squarely within the embrace of ERISA's preemptive remedial provisions—namely, § 502(a)(3)(B). JET ICU's grievance with the way its claim was processed goes to the very heart of issues within the scope of ERISA's exclusive regulation. As a result, JET ICU may not invoke state law theories of recovery and must proceed (if at all) under ERISA's exclusive remedy system.

ERISA defines an "employee welfare benefit plan" as:

> Any plan, fund or program which was heretofore or is hereafter established or maintained by an employer or by an employee organization, or by both, to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries, ***through the purchase of insurance*** or otherwise, ***(A) medical, surgical, or hospital benefits,*** or benefits in the event of sickness, accident, disability, death or unemployment . . . .

29 U.S.C. § 1002(1) (emphasis added). Under the plain language of the statute, an ERISA plan may be established by employers or employee organizations through the purchase of insurance. The plan document here shows that Beacon Hospital Management, LLC purchased group coverage for the benefit of its employees and their dependents. The Definitions include key terms such as "Member" and "Subscriber"

to describe the category of individuals who are entitled to enroll in the plan. [D.E. 1-7, pg. 42 and 47 of 153]. And the word "Group" is defined to mean the "company, partnership, association, corporation or other legal entity that has applied for coverage in this Plan." [*Id.*, at pg 40 of 153]. The plan sets forth the rules and conditions that surround entitlement to benefits, starting with the "Basics of Your Coverage." [Id. at Article 1, at pg. 28 of 153]. Benefits are paid on the basis of the plan's "Allowable Charge" rather than a provider's charge. And in the case of a Non-Participating provider (such as JET ICU), the plan cautions that a significant discrepancy might exist between the billed charge and the plan's Allowable Charge. [*Id.* at Article 1, pg. 31 of 153].

The parameters of the plan are readily ascertainable: the intended benefit is the provision of medical expense coverage; the participants include the employees of Beacon Hospital Management, LLC; the source of financing is payment of premiums by the employer group; and the procedure for recovering under the group plan is set out in the Benefit Plan and its Schedule of Benefits distributed to each enrolled Subscriber. As the Eleventh Circuit announced in *Donovan v. Dillingham*, 688 F.2d 1367, 1373 (11th Cir. 1982), an ERISA "plan" exists "if from the surrounding circumstances a reasonable person can ascertain the intended benefits, a class of beneficiaries, the source of financing, and procedures for receiving benefits." This is a "flexible analysis consistent with the legislative approach to ERISA" that coverage "be construed liberally to provide the maximum degree of protection to working men and women." *Williams v. Wright*, 927 F.2d 1540, 1543 (11th Cir. 1991).

It is now well established that ERISA completely preempts state law causes of action that fall within its scope. *Aetna Health Inc. v. Davila*, 542 U.S. 200, 208–09 (2004). In *Davila*, the Supreme Court discussed the structure of ERISA's enforcement scheme, § 502(a), and held that "any state-law cause of action that duplicates, supplements, or supplants the ERISA civil enforcement remedy conflicts with the clear congressional intent to make the ERISA remedy exclusive and is therefore preempted" 542 U.S. at 208–09. Further, a state-law cause of action is completely preempted "if an individual, at some point in time, could have brought his claim under [ERISA § 502], and where there is no other independent legal duty that is implicated by a defendant's actions." *Id*. at 210.

The *Davila* decision illustrates the Supreme Court's broad view of the preemptive force of ERISA. In *Davila*, two participants in an ERISA-regulated plan sued their HMOs after they refused to authorize coverage for certain medical procedures. The suit was brought under a Texas law (the Texas Health Care Liability Act) requiring HMOs "to exercise ordinary care" when making benefit determinations. The claimants argued that their HMOs had breached their duty of care under state law by denying them the medical services they preferred and insisting that they utilize less expensive alternatives. The Fifth Circuit Court of Appeals concluded that these claims under Texas state law did not duplicate any ERISA cause of action and therefore they were not preempted by ERISA. In the Fifth Circuit's view, these were "tort claims" that requested "tort damages" arising from a duty that was "external" to ERISA. *Id*. at 206.

In a unanimous opinion, the Supreme Court reversed the Fifth Circuit while noting that § 502(a) constitutes an "integrated enforcement mechanism" which is "essential to accomplish Congress' purpose of creating a comprehensive statute for the regulation of employee benefit plans." 542 U.S. at 208. The Supreme Court disapproved of the Fifth Circuit's focus on the tort-like nature of the remedies provided by the Texas state law. The Court cautioned that "distinguishing between preempted and non-preempted claims based on the particular label affixed to them would 'elevate form over substance and allow parties to evade' the preemptive scope of ERISA simply 'by relabeling their contract claims as tortious breach of contract.'" *Id.* at 214 (*quoting Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 211 (1985)).

As the Supreme Court emphasized, just because a state cause of action may provide remedies beyond those authorized by ERISA § 502(a), that does not "put the cause of action outside the scope of the ERISA civil enforcement mechanism." 542 U.S. at 214. In fact, the Court noted that "[n]owhere in [its prior precedent] did [it] suggest that the preemptive force of ERISA § 502(a) is limited to the situation in which a state cause of action precisely duplicates a cause of action under ERISA § 502(a)." 542 U.S. at 214. In keeping with Congress' intent to make the ERISA civil enforcement mechanism exclusive, complete preemption may be found "even if the elements of the state cause of action [do] not precisely duplicate the elements of an ERISA claim." *Id.* at 216. The Supreme Court found that the lawsuits were simply seeking to remedy "denials of coverage promised under the terms of the ERISA plans."

*Id.* at 211. Such claims could (and should) have been addressed through ERISA's exclusive enforcement mechanism, § 502(a). *See* 542 U.S. at 211.

This dispute centers squarely on the administration of a claim for benefits under an ERISA plan. To hear JET ICU tell it, the Defendants were required "by contract" to "arrange for and/or cover and insure" Y.D. for the service that JET ICU rendered. Second Am. Compl. ¶ 20. Defendants also "had a duty under Florida [statutory] law to not commit theft of services." Second Am. Compl. ¶ 21. However, no resolution of the claim for civil theft is possible without considering the ERISA plan. Much like the case in *Davila* where the Supreme Court saw the inseparable connection between a claim for violation of a duty imposed by the Texas Health Care Liability Act and the terms of the ERISA plan, here too the claim for violation of Florida's civil theft statute falls within the scope of ERISA's enforcement system. As in *Davila*, "[t]he only action complained of was [Defendants'] refusal to approve payment" in the amount that JET ICU demands and "the only relationship [Defendants] had with [JET ICU] was [Defendants'] administration of [the] employer's benefit plan." 542 U.S. at 211. If Defendants in this case "correctly concluded that, under the terms of the relevant plan," the payment figure constituted the Allowable Charge for a Non-Participating Provider service, then Defendants could not be found to have committed "civil theft." *Davila*, 542 U.S. at 213. Since JET ICU's state-law claims unquestionably "duplicate, supplement, or supplant" the ERISA civil enforcement remedy provided in § 502(a), the claims are completely preempted. *Davila*, 542 U.S. at 209.

The Eleventh Circuit adopted the *Davila* test for complete preemption in *Conn. State Dental Ass'n v. Anthem Health Plans, Inc.*, 591 F.3d 1337, 1345 (11th Cir. 2009); *see also Borrero v. United Healthcare of N.Y., Inc.*, 610 F.3d 1296, 1301 (11th Cir. 2010) ("We adopted this framework for ERISA preemption analysis in *Connecticut State Dental*."); *Garcon v. United Mut. of Omaha Ins. Co.*, 779 F. App'x 595, 597 (11th Cir. 2019) (using the *Davila* test to determine whether the plaintiff's claims were completely preempted by ERISA). Under *Davila*, ERISA completely preempts a state-law claim if: (1) a plaintiff, "at some point in time, could have brought [the] claim under ERISA § 502(a)(1)(B)," and (2) "there is no other independent legal duty that is implicated by a defendant's actions." 542 U.S. at 210.

This first prong of the *Davila* test is satisfied "if two requirements are met: (1) the plaintiff's claim must fall within the scope of ERISA; and (2) the plaintiff must have standing to sue under ERISA." *Conn. State Dental Ass'n*, 591 F.3d at 1350 (citing *Davila*, 542 U.S. at 211–12). Applying that first step to the allegations of this dispute, it is clear that JET ICU's claims are intended to dispute the way in which its claim for benefits was handled. At its core, the Complaint alleges that Defendants failed to discharge their duties under the ERISA plan. As a result, ERISA's civil remedy system "***exerts a strong preemptive power that converts [JET ICU's] state-law claims into federal ERISA claims***." *Morris v. S. Intermodal Xpress*, 757 F. App'x 799, 802 (11th Cir. 2018) (ERISA would have preempted any state-law claim that plan participant "may have raised" to challenge the denial of life insurance benefits where participant "could have

brought [the claim] under § 1132(a), and its resolution depend[ed] upon the interpretation of provisions contained within his ERISA policy.")[2] (emphasis added).

JET ICU could have sued under ERISA. "[A]ll one needs for standing under ERISA is a colorable claim for benefits, and '[t]he possibility of direct payment is enough to establish subject matter jurisdiction.'" *Conn. State Dental Ass'n*, 591 F.3d at 1353 (quoting *Kennedy v. Conn. Gen. Life Ins. Co.*, 924 F.2d 698, 700–01 (7th Cir. 1991)). Equipped with an assignment of benefits from its patient Y.D., JET ICU could have sought benefits allegedly due and owing from the plan. Instead, it sued for theft of services.

The second prong of the *Davila* test is satisfied because JET ICU's claims are not "predicated on a legal duty that is independent of ERISA." *Conn. State Dental Ass'n*, 591 F.3d at 1353. Rather, "[its] claims are predicated on the benefits [it] alleges [it] is owed under the terms of the plan." *Garcon v. United Mut. of Omaha Ins. Co.*, 779 F. App'x 595, 598 (11th Cir. 2019). Because JET ICU seeks to rectify a purported wrongful denial of benefits under the plan, and because its state-law causes of action do not attempt to remedy any violation of a legal duty independent of ERISA, JET ICU's state-law Complaint is completely preempted. *Id.*; *see also Gables Ins. Recovery, Inc. v. Blue Cross & Blue Shield of Fla., Inc.*, 813 F.3d 1333, 1338 (11th Cir. 2015) (claims

---

[2] References to 29 U.S.C. § 1132 are parallel citations to ERISA § 502. *See* Pub. L. 93-406, 88 Stat. 829 (codifying § 502 at 29 U.S.C. § 1132).

that "necessarily depend upon a breach of the ERISA plan . . . do not arise out of a separate duty independent on the plan.").

It is unusual for claimants to sue health plans for "civil theft" when their benefit claims are not processed in the manner they prefer. However, those courts that have confronted such claims have found them to be completely preempted by ERISA. For example, in *Filler v. Anthem Blue Cross*, 2012 WL 12539994, at *1 (C.D. Cal. Dec. 17, 2012), a non-network medical provider sued Anthem Blue Cross in state court alleging that it engaged in "a fraudulent scheme to enrich its customer" with insurance funds belonging to the provider who performed medical procedures on patients insured by Anthem Blue Cross. The medical provider brought various state-law claims including conversion and fraud. *Id*. at *1. Following its removal of the state-law Complaint, Anthem Blue Cross moved for dismissal on the basis of ERISA preemption.

Relying on *Davila*, the district court conducted a complete preemption analysis and "conclude[d] that [the medical provider's] claims for conversion, negligent entrustment, and interference with contractual relations could all be construed as colorable claims for benefits owed pursuant to an ERISA plan." 2012 WL 12539994, at *5. The district court also found although the physicians' claims were styled as tort claims, "this [conversion] theory of wrongdoing is not cognizable as anything other than a claim to benefits under the plan." *Id*. at *6. As a result, both prongs of the *Davila* test were satisfied and the non-network providers' state-law claims were dismissed as completely preempted.

Similarly, in *U.S. Renal Care, Inc. v. Wellspan Health*, 2015 WL 5286638, at *1 (M.D. Pa. Sept. 10, 2015), a dispute arose between a dialysis center and an employee welfare benefit plan regarding alleged overpayments to the center. The center challenged the plan's recoupment of funds as contrary to ERISA and Pennsylvania's state law of conversion. *Id.* at *4. The district court found that ERISA completely preempted the conversion claim and reasoned as follows: "Here, Plaintiff's claim for conversion is simply the flipside of the coin to its claim for benefits under ERISA. The funds Plaintiff claims Defendants have converted in Count I of the complaint are the same funds Plaintiff claims are owed for dialysis services it rendered to WW pursuant to the terms of the Plan in Counts II and III. Thus, rather than being independent of the Plan, the question of whether Defendants had the right to recoup alleged overpayments for past services provided to WW from current and future claims for the same patient is entirely dependent upon the terms of the Plan." *Id.* at *7; *see also Roberts v. Aetna Life Ins. Co.*, 2021 WL 5355212, at *9 (D. Colo. Sept. 30, 2021) (plaintiff's Colorado state-law claims for civil theft and conversion were completely preempted by ERISA because "the factual basis of the [theft] claims for relief is not independent of the rights and duties created by the plan.").

Under the *Davila* test and the reasoning of district court decisions that reject civil theft claims when brought to contest the administration of a claim for ERISA benefits, JET ICU's claims must be dismissed as completely preempted. The same result is warranted on JET ICU's claim for quantum meruit. *Gables Ins. Recovery, Inc.*, 813 F.3d at 1337–40 (holding plaintiff's claims for breach of contract, quantum meruit, open

account, and account stated were all completely preempted by ERISA: "Gables argues that its claims arise out of a separate duty independent of the ERISA plan; in other words, they do not depend on whether Florida Blue has a duty to pay for services under the ERISA plan. *We disagree*.") (emphasis added); *see also Vocational Dev. Grp., LLC v. Aetna Health, Inc.*, 2017 WL 6940562, at *5 (M.D. Fla. Sept. 6, 2017) (rejecting non-network medical provider's attempt "to couch its claims as arising under state law" and finding that ERISA completely preempted the underpayment claims that stemmed from Aetna's failure to pay "for even half of the charges" billed by the provider); *Lab. Physicians, P.A. v. AvMed, Inc.*, 2009 WL 2486328 (M.D. Fla. 2009) (entering judgment on the pleadings in favor of AvMed upon finding that ERISA completely preempted pathologists' state-law claims for quantum meruit and unjust enrichment).

### B.   JET ICU Fails To State Plausible Claims for Civil Theft, Conversion, And Conspiracy To Commit Civil Theft Because The Allegations Reveal An Ordinary Business Dispute And No Felonious Intent.

#### 1.   Civil Theft

Under Florida criminal law, theft is "knowingly obtain[ing] or us[ing] . . . the property of another with intent to, either temporarily or permanently (a) Deprive the other person of a right to the property or a benefit from the property; or (b) Appropriate the property . . . to the use of any person not entitled to the use of the property." Fla. Stat. § 812.014(1). Complementing the criminal law, Florida's Civil Remedies for Criminal Practices Act, *id.* §§ 772.101–.19, provides any victim of criminal theft with "a cause of action for threefold the actual damages sustained and, in any such action,

is entitled to minimum damages in the amount of $200, and reasonable attorneys' fees and court costs." *Id.* § 772.11(1). Civil theft must be proved by clear and convincing evidence. *Id.*

It also requires a showing of "felonious intent." *Lewis v. Heartsong, Inc.*, 559 So. 2d 453, 454 (Fla. 1st Dist. Ct. App. 1990). That is to say, theft is a specific-intent crime. *Segal v. State*, 98 So. 3d 739, 742 (Fla. 4th Dist. Ct. App. 2012). The victim must plead and prove *two* states of mind: (1) that the accused intentionally took the property; and (2) that the accused intended to steal it, or, in other words, deprive the owner of the property. *Id.* It is not enough to prove the crime of theft if the accused intentionally the took the property, but did so under the mistaken belief that it was his or her property. *Cliff Berry, Inc. v. State*, 116 So. 3d 394, 407–08 (Fla. 3d Dist. Ct. App. 2012) ("The theory of defense advanced by CBI and Smith was legally valid. When held in good faith, an honest belief in one's entitlement to property is a complete defense to the crime of theft, even though the belief may be foolish, unreasonable, or mistaken, because it negates an essential element of the offense."). Finally, it must be proved that "the felonious intent required existed at the time of the taking." *Szilagyi v. State*, 564 So. 2d 644, 645 (Fla. 4th Dist. Ct. App. 1990).

There is no claim for civil theft (or any tort) as a matter of law when the basis of a relationship is commercial, and a contractual agreement governs the nature of that relationship. *See Leisure Founders, Inc. v. CUC Int'l, Inc.*, 833 F. Supp. 1562, 1574 (S.D. Fla. 1993). This is well established as the law in Florida. "[A]n action in tort is inappropriate where the basis of the suit is a contract, either express or implied." *Belford*

*Trucking Co. v. Zagar*, 243 So. 2d 646, 648 (Fla. 4th Dist. Ct. App. 1970). And, more specifically, "[a] dispute between two persons over the amount of money that one person is owed does not become a crime of theft . . . ." *Rosen v. Marlin*, 486 So. 2d 623, 625 (Fla. 3d Dist. Ct. App. 1986).

Thus, JET ICU cannot state a plausible claim for civil theft against Florida Blue as a matter of law. The entire basis of JET ICU and Florida Blue's dispute is an ordinary business relationship that JET ICU improperly tries to convert to damages in tort. "Under Florida law, 'a simple monetary debt generally cannot form the basis of a claim for conversion or civil theft.'" *Cabana on Collins, LLC v. Regions Banks*, 2011 WL 13223712, at *2 (S.D. Fla. June 7, 2011) (quoting *Walker v. Figarola*, 59 So. 3d 188, 190 (Fla. 3d Dist. Ct. App. 2011)); *Freeman v. Sharpe Resources Corp,*, 2013 WL 2151723, at *12 (M.D. Fla. May 16, 2013).

But "Florida law does not bar a civil theft claim *simply* because a contractual relationship is involved." *Colonial Penn Ins. Co. v. Value Rent-A-Car, Inc.*, 814 F. Supp. 1084, 1093 (S.D. Fla. 1992) (emphasis added). A plaintiff claiming theft based on a contractual relationship can overcome this if he or she alleges loss "separate and distinct from [the] contractual dispute." *O'Donnell v. Arcoiries, Inc.*, 561 So. 2d 344, 345 (Fla. 4th Dist. Ct. App. 1990). In other words, "the alleged loss which results from the theft, must be *separate* and *distinct* from any loss alleged to have resulted from the breach of contract." *Colonial Penn Ins. Co.*, 814 F. Supp. at 1093 (emphasis added).

Here, nothing about JET ICU's allegations speak to conduct by Florida Blue, much less JET ICU's losses, that is *separate* or *distinct* from the commercial relationship between the two businesses. Again, this dispute is squarely on the administration of a claim for benefits under an ERISA plan. Florida Blue, according to JET ICU, was required "by contract" to "arrange for and/or cover and insure" Y.D. for the services. The entire universe of allegations against Florida Blue speak to the contractual, commercial relationship between JET ICU and Florida Blue.

Few recognized exceptions, none of which apply here, explain this separate-and-distinct requirement. Florida courts have green-lit civil-theft claims despite underlying contractual relationships when the malefactor has committed wrongs like "classic embezzlement," *Masvidal v. Ochoa*, 505 So. 2d 555, 556 (Fla. 3d Dist. Ct. App. 1987), where the "contract was merely incidental" to the wrongdoing alleged, *Nova Flight Ctr., Inc. v. Viega*, 554 So. 2d 626, 627 (Fla. 5th Dist. Ct. App. 1989), or where monies "are owned by the plaintiff and given to defendant to temporarily hold in a segregated and identifiable account, which the defendant then refuses to return," *Cabana on Collins, LLC*, 2011 WL 13223712, at *3.

As to the third exception, "[a] civil theft claim requires that the funds sought be *specifically identifiable funds* of the plaintiff." *Mazza v. Rose Media Group, Inc.*, 937 So. 2d 307, 309 (Fla. 4th Dist. Ct. App. 2006) (emphasis added). And "[t]he fact that the amount is certain does not make an identifiable fund." *Guevara v. Republica Del Peru*, 2008 WL 11333432, at *3 (S.D. Fla. Nov. 7, 2008). "Money is capable of identification where it is delivered at one time, by one act and in one mass, or where the deposit is

special and the identical money is to be kept for the party making the deposit, or where wrongful possession of such property is obtained." *Belford Trucking Co. v. Zagar*, 243 So. 2d 646, 648 (Fla. 4th Dist. Ct. App. 1970). Not only "specifically identifiable," the "delivered at one time" requirement espoused in *Belford* is critical, as well. Very recently, Judge Ruiz in this District dismissed a similar claim for civil theft because the allegations failed to demonstrate "that Defendant has refused *to return* funds that were owned by Plaintiff and *given to Defendant* to temporarily hold in a segregated and identifiable account." *Vidales v. StonCor Grp., Inc.*, 2024 WL 167187, at *3 (S.D. Fla. Jan. 16, 2024) (emphasis added).

The monies sought by JET ICU are not "specifically identifiable" under the case law. The allegations from JET ICU speak only to a breach of an implied promise to pay for services rendered. There are no allegations of monies given to Florida Blue for temporary holding. Simply, nothing about this lawsuit sounds in theft.

## 2.   <u>Conversion</u>

"Under Florida law, conversion is an unauthorized act which deprives another of his property permanently or for an indefinite time." *Small Bus. Admin. v. Echevarria*, 864 F. Supp. 1254, 1262 (S.D. Fla. 1994). Generally, "[w]hen a defendant rightfully acquires possession of a plaintiff's property, an action for conversion may arise out of the plaintiff's demand for its return and the defendant's refusal to surrender it." *United States v. Bailey*, 288 F. Supp. 2d 1261 (M.D. Fla. 2003). There must be an intent to exercise dominion over the property that is "inconsistent with the real owner's right of

possession." *Hannah v. Malik Holdings, LLC*, 368 So. 3d 1087, 1091 (Fla. 6th Dist. Ct. App. 2023).

But like its claim for civil theft, JET ICU's claim for conversion is barred by the independent tort doctrine, too. Florida's Third District Court of Appeal states it most clearly: "[C]ivil theft or conversion must go beyond, and be independent from, a failure to comply with the terms of a contract." *Gasparini v. Pordomingo*, 972 So. 2d 1053, 1055 (Fla. 3d Dist. Ct. App. 2008). Moreover, a simple debt that can be discharged by payment cannot form the basis of a claim for conversion. *Rosen*, 486 So. 2d at 625. JET ICU's allegation amount to "a contractual dispute, nothing more." *Island Travel & Tours, Ltd., Co. v. MYR Indep., Inc.*, 300 So. 3d 1236, 1240 (Fla. 3d Dist. Ct. App. 2020).

### 3.    Conspiracy to Commit Civil Theft

Finally, JET ICU's claim for conspiracy to commit civil theft must be dismissed because "the gist of a civil action for conspiracy is not conspiracy itself but the civil wrong which is done pursuant to the conspiracy and which results in damage to the plaintiff." *Berger v. Levin*, 231 So. 2d 875, 877 (Fla. 3d Dist. Ct. App. 1970). Stated otherwise, "[t]here is no freestanding cause of action in Florida for 'civil conspiracy,'" *Tejera v. Lincoln Lending Servs., LLC*, 271 So. 3d 97, 103 (Fla. 3d Dist. Ct. App. 2019), and the underlying tort must first be established in order to state a claim for *conspiracy* to commit the tort, *Buchanan v. Miami Herald Publ'g Co.*, 206 So. 2d 465, 468–69 (Fla. 3d Dist. Ct. App. 1968). The claim for civil conspiracy "is merely the vehicle by which the underlying tort was committed." *Tejera*, 271 So. 3d at 103.

In *Buchanan*, Florida's Third District Court of Appeal dismissed a claim for conspiracy to commit malicious prosecution because the underlying charge of malicious prosecution, itself, was not actionable. *Id.* at 469. Following *Buchanan*, the *Berger* court found no claim for conspiracy to commit civil theft when the underlying charge of civil theft was not actionable. 634 So. 2d at 279. The same applies here. JET ICU cannot state a claim for civil theft—or conversion, either. Without a claim for civil theft, it is a legal impossibility to state a claim for conspiracy to commit civil theft. JET ICU's conspiracy claim must be dismissed, as well.

### C.    JET ICU's Claim for Quantum Meruit Fails For Failure to Allege a Benefit Conferred Upon Defendants

Under Florida law, quantum meruit and unjust enrichment claims share the following elements: (1) "the plaintiff must have conferred a benefit on the defendant"; (2) "the defendant must have knowledge of the benefit"; (3) "the defendant must have accepted or retained the benefit conferred"; and (4) "the circumstances must be such that it would be inequitable for the defendant to retain the benefit without paying fair value for it." *Merle Wood & Assocs., Inc. v. Trinity Yachts, LLC*, 714 F.3d 1234, 1237 (11th Cir. 2013). "As to the first element, the benefit conferred on the defendant must be a direct benefit." *Johnson v. Catamaran Health Sols., LLC*, 687 F. App'x 825, 830 (11th Cir. 2017). "The direct benefit requirement has been strictly applied by Florida courts." *Donoff v. Delta Air Lines, Inc.*, 2020 WL 1226975, at *12 (S.D. Fla. Mar. 6, 2020). Thus, courts reject claims for implied contracts where the benefit conferred on a defendant

is only indirect. *See e.g., Hyundai Motor Am. Corp. v. N. Am. Auto. Servs., Inc.*, 2021 WL 7083014, at *12 (S.D. Fla. May 26, 2021).

In *Kopel v. Kopel*, 229 So. 3d 812, 818 (Fla. 2017), the Florida Supreme Court held a plaintiff "must directly confer the benefit to the defendant" to prevail on these implied-contract theories. Applying *Kopel*, the district court in *Hyundai Motor* dismissed an unjust enrichment claim because "there is no reasonable way to construe such a benefit as direct." 2021 WL 7083014, at *12; *see also Steven L. Steward & Assocs., P.A. v. Truist Bank*, 2020 WL 5939150, at *2 (M.D. Fla. Oct. 6, 2020) (relying on *Kopel* while dismissing unjust enrichment claim where the allegations showed only indirect benefit to defendant).

Here, JET ICU alleges it "provided services ***to Patient*** pursuant to Patient's physician or healthcare provider's direction." Second Am. Compl. ¶ 53 (emphasis added). This allegation alone demonstrates that JET ICU acted at the request of its client, "Patient," and not at the request of the Defendants. JET ICU underscores this point at paragraph 32 by alleging that "JET ICU was the ambulance provider ***chosen by Patient*** and/or Patient's then-treating physician/provider." (emphasis added). JET ICU speculates that its rendition of services "***to Patient***" did something to help the Defendants satisfy a condition of their licenses to sell insurance. Even accepting this allegation as true, it is far too tenuous a benefit to satisfy the Florida Supreme Court's requirement in *Kopel*.

JET ICU's allegations are inadequate to illustrate the form of "direct" benefit that is required in order to imply a contract with the Defendants. *Virgilio v. Ryland Group, Inc.*, 680 F.3d 1329, 1337 (11th Cir. 2021) (holding that plaintiffs failed to confer a benefit on defendants where the relationship alleged by plaintiffs with defendants was indirect); *see also Aventus Health, LLC v. UnitedHealthcare, Inc.,* No. 6:22-CV-2408-PGB-EJK, 2023 WL 11724679, at *7 (M.D. Fla. Sept. 8, 2023) ("Here, Defendants correctly argue that Plaintiffs did not directly confer a benefit on Defendants but rather onto the patients, rendering an unjust enrichment claim untenable in this instance. The Court does not find that it has been presented with any extenuating circumstances that would support a departure from what is well-settled law in this context."); and *Apex Toxicology, LLC v. United Healthcare Servs., Inc.*, 2020 WL 13551296, at *7 (S.D. Fla. Jan. 17, 2020) (observing that despite laboratory provider's "formulaic recitation of elements of a claim for unjust enrichment, it fails to allege that it conferred a benefit on United because benefits of healthcare treatment flow to patients, not to insurance companies.").

Furthermore, a quantum meruit claim is precluded by the existence of an express contract concerning the same subject matter on which the quasi-contract rests. *Glob. Network Mgmt., LTD. v. Centurylink Latin Am. Sols., LLC*, 67 F.4th 1312, 1317 (11th Cir. 2023) ("When a contract addresses a certain topic, that topic cannot be the subject of a claim for a contract implied in law."). JET ICU alleges that Defendants owed a duty under the insurance plan to furnish coverage for ambulance services and that such duty is a facet of Defendants' business as insurers. Second Am. Compl.

¶¶ 20–21. JET ICU contends that Defendants failed to discharge their obligations under the plan pursuant to which the patient was enrolled. These allegations of Defendants' payment obligation under a written health plan foreclose the maintenance of a separate claim for quantum meruit. *Karp v. Bank of Am., N.A.*, 2013 WL 1121256, at *5 (M.D. Fla. Mar. 18, 2013) ("Under Florida law, a plaintiff cannot pursue a quasi-contract claim for unjust enrichment when an express contract exists that concerns the same subject matter."). As such, Count IV for quantum meruit cannot stand.

## III.    CONCLUSION

The state law causes of action that frame the Second Amended Complaint create an alternative remedy to obtaining benefits from an ERISA plan. As a result, the Second Amended Complaint frustrates the purpose and objectives of Congress to create an exclusive federal remedy in ERISA § 502(a). Under *Davila* and its progeny, JET ICU's state law claims are unauthorized and due to be dismissed by operation the doctrine of complete preemption.

Additionally, JET ICU's state-law claims for civil theft, conversion, and conspiracy to commit civil theft are nothing more than a thinly veiled attempt to "up the ante" by converting a contractual dispute into a theft claim in order to obtain the possibility of treble damages. Courts do not—and should not—countenance the use of Florida's civil theft statute to transform a contractual controversy into a civil theft claim, replete with the more onerous damages that accompany such a claim.

Finally, JET ICU fails to allege facts sufficient show that it conferred a direct benefit on the Defendants by rendering services to a health plan member. For each of these reasons, the Second Amended Complaint is due to be dismissed.

WHEREFORE, Defendant, BLUE CROSS AND BLUE SHIELD OF FLORIDA, INC., respectfully requests the entry of an Order dismissing JET ICU's Second Amended Complaint in its entirety.

## Local Rule 3.01(g) Certification

I hereby certify that, under Local Rule 3.01(g)(1), I conferred telephonically with counsel for Plaintiff JET ICU on the morning of August 26, 2024, regarding the relief sought in this Motion to Dismiss. Plaintiff opposes the relief requested by Blue Cross and Blue Shield of Florida, Inc.

By:  */s/ Daniel Alter*
Daniel Alter, Esq.
Florida Bar No. 0033510
Eric Yesner, Esq.
Florida Bar No.127219
Email: dan.alter@gray-robinson.com
eric.yesner@gray-robinson.com
GRAYROBINSON, P.A.
401 East Las Olas Boulevard, Suite 1000
Fort Lauderdale, Florida 33301
Tel:  954-761-8111
Fax: 954-761-8112

*Counsel for Defendant Blue Cross and Blue Shield of Florida, Inc.*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 26th day of August, 2024, a true and correct copy of the foregoing document was electronically filed via the Court's CM/ECF System which will send a Notice of Electronic Filing to Attorneys for Plaintiff, Michael Brannigan, Esq., 1511 N. Westshore Boulevard, Suite 650, Tampa, FL 33607 (brannigan35@yahoo.com, michaelbrannigan@jeticu.com, legal@jeticu.com) and to Attorneys for Defendant, Geoblue, Stephen Hunter Johnson, Esq. and Peter Agola, Esq., Lydecker LLP. 1221 Brickell Avenue, 19th Floor, Miami, FL 33131 (shj@lydecker.com and pagola@lydecker.com)

By: */s/ Daniel Alter*
Daniel Alter, Esq.
Florida Bar No. 0033510
Eric Yesner, Esq.
Florida Bar No.127219
Email: dan.alter@gray-robinson.com
eric.yesner@gray-robinson.com
GRAYROBINSON, P.A.
401 East Las Olas Boulevard, Suite 1000
Fort Lauderdale, Florida 33301
Tel:  954-761-8111
Fax: 954-761-8112

*Counsel for Defendant Blue Cross and Blue Shield of Florida, Inc.*